IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

**GINA REGINA MOORE,** individually and on behalf of all others similarly situated,

*Plaintiff*,

*v.*

**MAGNOLIA BANK, INC.**, a Kentucky corporation,

*Defendant.*

Case No. 2:25-cv-02745-MSN

**CLASS ACTION**

**DEMAND FOR JURY TRIAL**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Gina Regina Moore ("Plaintiff Moore" or "Moore") brings this Class Action Complaint and Demand for Jury Trial against Defendant Magnolia Bank, Inc. ("Defendant" or "Magnolia Bank") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited calls to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Moore, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff Moore is a resident of Memphis, Tennessee.

2. Defendant Magnolia Bank is a Kentucky registered corporation headquartered in Elizabethtown, Kentucky. Defendant Magnolia Bank conducts business throughout this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper since the Defendant does business in this District and the wrongful conduct giving rise to this case was directed from the Defendant into this District where the Plaintiff resides.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 5.0 billion robocalls were placed in April 2025 alone, at a rate of 165.0 million per day. www.robocallindex.com (last visited May 25, 2025).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Magnolia Bank is a community bank that provides financial services to consumers including mortgage loans and refinancing.[3]

14. Defendant Magnolia Bank places calls to consumers to solicit its loan and refinancing services.

15. This includes placing unsolicited calls to consumers who registered their phone number on the DNC, as per Plaintiff's experience.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://www.linkedin.com/company/magnolia-bank/about/

16. In Magnolia Bank's job postings for a mortgage loan officer, the Defendant clearly states that its officers will develop business through cold calling:

**About the job**

Magnolia Bank is a community bank that has served the surrounding area for over 100 years. Our footprint includes banking centers located in Central Kentucky, mortgage offices throughout the U.S. and over 300 employees. We hold ourselves to the highest standard when it comes to providing an excellent customer experience through our personal way and the nurturing of our employees' personal and professional growth. We keep a fun, friendly and engaging atmosphere all while living the Magnolia Values of Honesty, Integrity, Confidentiality, Excellence and Professionalism every day. Magnolia Bank is a customer focused bank that empowers, encourages, and engages our employees. Being Adaptive and Innovative is one of the main reasons Magnolia Bank continues to prosper.

We are currently seeking applicants for Mortgage Loan Officers in the Louisville, KY Market.

Qualified Candidates will be responsible for:

- Originating mortgage loans
- Complying with all Federal regulations concerning secondary market mortgage lending
- Providing customers with required documents to comply with bank regulations, including but not limited to Good Faith Estimates of closing costs, and other Real Estate Settlement and Procedures Act (RESPA) documents
- Develop business referral network through cold-calling, prospecting and local networking activities [4]

17. In fact, a former employee posted a job review on Indeed in which they complained about having to place cold calls to elderly veterans, a complaint that is relevant because Plaintiff received unsolicited calls regarding a VA loan:

★☆☆☆☆ April 29, 2021

**Felt swindled.**

**Loan Officer** Irvine, CA

Did their call center program for 6 months straight with great support. Then was able to be a sponsored loan officer. They just throw you in with bare minimum training and expect you to be able to cold call elderly veterans.
Maybe two weeks into training company laid off half work force due to poor sales. Totally blindsided. [5]

[4] https://www.linkedin.com/jobs/view/mortgage-loan-officer-louisville-ky-market-at-magnolia-bank-nmls-423028-4158653467/
[5] https://www.indeed.com/cmp/Magnolia-Bank-Inc/reviews

18. A current employee posted that his job at Magnolia Bank entails placing 300 telemarketing calls.

**La'Quaveous Benning-Dillon** (He/Him)
Blessed

**Experience**

MAGNOLIA BANK

**VA Mortgage Lending**
Magnolia Bank - NMLS 423028 · Full-time
Apr 2025 - Present · 2 mos
Las Vegas, Nevada, United States · On-site

Makes 300 phone calls
Transfer Red or Green Leads
Help homeowners access equity from their homes, for home improvement, debt consolidation, or to assist a homeowner in making a smart financial opportunity.
Close on 20 deals minimum per week.
A top 5 rep/ agent and less than 10% return rate.

**Mortgage Lending, Mortgage Servicing and +5 skills** [6]

19. Consumers have posted complaints online about unsolicited calls that they received from Magnolia Bank, including:

- "They keep calling me regardless of me telling them not to sell me on remortgaging my house. It's to the point of harassment at this point. STOP CALLING ME !!!"[7]
- "on 1/2/2024 magnolia bank contacted me directly. They had my phone number, name, current home address, and loan information. The person on the call would not tell me how they received any of this information. Loan information was mentioned as well. I asked numerous times how they received my information, and the caller was unable to elaborate. Please make magnolia bank aware of the acts below to protect consumers. I never once gave out any information of that nature nor did I ever contact magnolia bank under any circumstances…"[8]
- "I have received cold sales calls near daily for weeks asking me to refinance my property. I have repeatedly asked to be removed from their call lists and they continue their relentless calls. This boarders on harassment. When I state I am not interested and to be removed from calls this they proceed to speak over me and push their agenda. This is not a professional way to conduct business."[9]

[6] https://www.linkedin.com/in/la-quaveous-benning-dillon-6130b295/
[7] https://www.bbb.org/us/ky/elizabethtown/profile/bank/magnolia-bank-0402-2033713/customer-reviews
[8] https://www.bbb.org/us/ky/elizabethtown/profile/bank/magnolia-bank-0402-2033713/complaints
[9] Id.

- "Get a clue, if I don't return a call we don't want to refinance. Remember you originally called us and we told you we were not interested, but you insisted. If we have not taken your calls from the initial phone call and have not returned any voicemails then we probably aren't interested. What smart person would refinance when their interest rate is already 2.25%! Do NOT call someone at work because they aren't returning your call. That is crossing the line!"[10]
- "I get calls from magnolia bank daily. I do not have a mortgage or any business with magnolia, however they keep calling me to take equity out of my home. I've told them I'm not interested and to please remove me from their list. Yet they continue to call me, it's been going on for 9 months now. From multiple different phone numbers."[11]

20. In response to these phone calls, Plaintiff Moore brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF MOORE'S ALLEGATIONS

21. Plaintiff Moore is the sole owner and user of her cell phone number ending in 6390.

22. Plaintiff Moore has owned her cell phone number for over 20 years.

23. Plaintiff Moore registered her cell phone number on the DNC on December 16, 2004.

24. Plaintiff Moore uses her cell phone number for personal use only as one would use a landline telephone number in a home. She has never had her cell phone number associated with a business.

25. In fact, Plaintiff Moore's cell phone functions exactly like a home landline.

26. The only phone that Plaintiff Moore possesses is her cell phone number. She does not have a separate landline.

[10] https://wallethub.com/profile/magnolia-bank-13004385i#reviews
[11] https://www.google.com/search?q=270-765-4072

27. Plaintiff Moore uses her cell phone number for personal and household personal use, which includes speaking to friends and family, and scheduling personal appointments.

28. Plaintiff Moore keeps her cell phone in her residence and uses the cell phone primarily in her residence.

29. Plaintiff Moore's cell phone number is registered under her personal name and is not reimbursed by any business.

30. In fact, Plaintiff Moore is retired and spends most of her time in her residence.

31. The Federal Communications Commission has expressly confirmed that the protections of the TCPA's Do Not Call provisions extend to wireless telephone numbers. In its 2003 TCPA Order, the FCC held that "wireless subscribers may participate in the national do-not-call list" and that "wireless subscribers will benefit from the full range of TCPA protections" (In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶¶ 36–38 (2003)).

32. The FCC has repeatedly reaffirmed this interpretation in subsequent rulings, emphasizing that the Do Not Call Registry applies equally to residential landline numbers and personal wireless numbers used for non-business purposes. Plaintiff registered her wireless number on the national Do Not Call Registry in reliance on these regulatory directives, and thus qualifies as a "residential telephone subscriber" within the meaning of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

33. Even in light of the Supreme Court's recent decisions in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), the FCC's interpretation that wireless subscribers qualify as "residential telephone subscribers" remains highly persuasive authority. Under ordinary

principles of statutory interpretation, courts have recognized that Congress enacted the TCPA to protect the privacy of individuals in their homes and daily lives, regardless of whether that protection is implemented through a traditional landline or a wireless phone used exclusively for personal, residential purposes. *See, e.g.*, *Isaacs v. USHealth Advisors, LLC*, No. 3:24-CV-00216-LMM, 2025 WL 2268359, at *3 (N.D. Ga. Aug. 7, 2025) (holding that a "residential subscriber" is one who maintains a phone for private, domestic use).

34. Excluding wireless subscribers would undermine the statute's remedial purpose, especially given that most American households today rely exclusively on wireless numbers as their home phones. Thus, Plaintiff's allegations fall squarely within both the plain text and the purpose of the TCPA.

35. On November 19, 2024 at 1:50 PM, Plaintiff Moore received an unsolicited call to her cell phone from 901-563-3631.

36. This call was not answered.

37. On November 19, 2024 at 4:00 PM, Plaintiff Moore received a 2nd unsolicited call to her cell phone from 901-563-3631.

38. When Plaintiff Moore answered this call, a male caller said that he was calling about Plaintiff's mortgage, explaining that he knew that Plaintiff has a VA loan from her late husband.

39. The male caller then began asking questions about Plaintiff's late husband, asking where he served.

40. Plaintiff Moore was surprised by the caller's knowledge of her personal details and asked how he was able to access this information.

41. The caller explained that Plaintiff's information is a matter of public record.

42. The caller then asked about Plaintiff's debt to determine what Plaintiff's property would qualify through refinancing that he could offer her.

43. Plaintiff Moore explained that she was not interested in refinancing her mortgage and ended the call.

44. No company name was stated during this solicitation call.

45. On November 25, 2024 Plaintiff Moore received an unsolicited call to her cell phone from 707-308-2076.

46. This call was not answered, but a voicemail was left stating:

> "Hi Ms. Moore, this is Jessica calling from Magnolia Bank. I hope you're doing well today. I'm just doing a follow-up call. I see we've tried to reach out to you in the past about getting you some options and accessing your home's equity. And that you're looking to get some cash out to do some home improvements, pay off some debts, or just looking to refinance. I want to play out some options available for you. So if you are interested, I'm a qualified lender and happy to assist you in getting started. My callback number is 707-308-2076. And again it's Jessica with Magnolia Bank. Thank you."

47. Shortly after receiving this voicemail, Plaintiff Moore received an email from a Magnolia Bank employee named Alisha Leuty:

**Fwd: MORTGAGE OPTIONS WITH MAGNOLIA BANK**

From: **Alisha Leuty** <aleuty@magnoliabank.com>
Date: Mon, Mar 25, 2024, 3:29 PM
Subject: MORTGAGE OPTIONS WITH MAGNOLIA BANK
To: [redacted]

Hi Ms. Moore,

We spoke earlier about looking into some potential refinance options on your mortgage. I have included my direct contact information and Nationwide Mortgage Licensing System (NMLS) registration number for you down below. I have also included a link to the NMLS consumer access site which can help you to further validate my credentials. So that we can see how your loan is currently set up and to show you the best possible options that will save you the most money, the items we will need are:

1. a copy of your most recent mortgage statement (to see outstanding balance, current rate, and payment breakdown)

2.) a copy of your homeowners insurance declarations page (to keep escrow set up the same way with your options)

Many of the people I speak with do not have these documents handy; so if it makes things more convenient for you, we can get them together very easily with a conference call to your current lender.

We do also like to verify the credit scores with a soft credit check; this will not have any impact to your credit scores and does not show as an inquiry on your credit report. Keep in mind that right now you are not committing to anything or making any changes. We like to have this information up front so that we can provide you with accurate figures that will pertain to exactly what you would be eligible for if you were to move forward with us, so that you can make the most educated financial decision.

Once we receive all the listed above information, we will be able to put together at least two or three different scenarios for you. We believe in earning your business through accuracy and transparency, and we will work hard to find you the best possible options! We have been in business now for over 100 years, we specialize in VA loans, and we are highly competitive with other lenders. Please feel free to call me with any questions that you may have. It was a pleasure speaking with you.

Best Regards,

**Alisha Leuty**
**Mortgage Banker**
**NMLS# 1735364**

MAGNOLIA BANK

8:30-5:00pm M-F PST
***451 Aviation Blvd Ste 100***
***Santa Rosa, CA 95403***
707-791-2886 | **Direct**
866-383-7488 | **EFax**
**www.magnoliabank.com**

48. As per the email, Alisha Leuty is a Magnolia Bank employee:

MAGNOLIA BANK

Alisha Leuty

aleuty@magnoliabank.com

707.791.2886

NMLS 1735364 [12]

49. On May 8, 2025 at 10:12 AM, Plaintiff Moore received an unsolicited call to her cell phone from 901-588-2521.

50. When Plaintiff answered this call, an employee introduced himself as Jacob Matthews who said that he was with the VA Loan Department.

51. Plaintiff recognized Jacob's voice from the November 19, 2024 call.

52. Plaintiff Moore asked Jacob about the company he works for and Jacob said that the company name is Magnolia Bank, and that he works for the VA loan department.

53. Plaintiff Moore was concerned about the knowledge Jacob had regarding her mortgage and told him that she did not have time to talk, but Jacob was persistent in soliciting mortgage refinancing.

54. Jacob asked Plaintiff Moore again, as he did in the first call, about how much debt she owes, but Plaintiff Moore wouldn't share her personal details.

55. Plaintiff Moore told Jacob that she had to go.

[12] https://www.magnoliabankmortgage.com/AlishaLeuty.html

56. On May 12, 2025 at 10:42 AM, Plaintiff Moore received an unsolicited call to her cell phone from 901-675-9855.

57. When Plaintiff Moore answered this call, an employee said that he was calling from Magnolia Bank about a loan that could benefit Plaintiff.

58. Plaintiff Moore asked the employee why she was receiving calls from Magnolia, to which he responded that they would be calling until they she agrees to a loan from them.

59. Plaintiff Moore has never done business with Magnolia Bank or consented to be called by them.

60. Plaintiff's attorneys sent a demand for consent email to Magnolia Bank on May 18, 2025 but no proof of consent has been provided.

61. The unauthorized solicitation calls that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Moore in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

62. Seeking redress for these injuries, Plaintiff Moore, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

**63.** Plaintiff Moore brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Magnolia Bank called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

64. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its

subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Moore anticipates the need to amend the Class definition following appropriate discovery.

65. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class. Like Plaintiff, members of the class received unsolicited calls from Magnolia Bank to their National Do Not Call Registry registered telephone numbers despite never consenting to receive such calls and never having done business with Magnolia Bank.

66. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant Magnolia Bank placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(b) whether the calls constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

67. **Adequate Representation**: Plaintiff Moore will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Moore has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Moore and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Moore nor her counsel have any interest adverse to the Class.

68. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Moore. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Moore and the Do Not Call Registry Class)**

69. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

70. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

71. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

72. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Moore and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

73. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Moore and the Do Not Call Registry Class received more than one call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

74. As a result of Defendant's conduct as alleged herein, Plaintiff Moore and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

75. To the extent Defendant's misconduct is determined to be willful and knowing,

the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Moore requests a jury trial.

**GINA REGINA MOORE**, individually and on behalf of all others similarly situated,

DATED this 10th day of September, 2025.

By: /s/ *Bradley G. Kirk*

Bradley G. Kirk (17100)
bgkirklaw@gmail.com
Attorney at Law
1910 Madison Avenue, #112
Memphis, TN 38104
(901) 206-6163

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.

237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*